**In Re Anonymous No. 72 D.B. 83**

Disciplinary Board Docket No. 72 D.B. 83.

REPORT AND RECOMMENDATION OF THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA
To The Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania:

MUNDY, *Member*, June 26, 1985—Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement, and at the direction of this honor-

able court by its order dated March 29, 1985, the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

An extensive procedural history was provided in the prior opinion of the board which is part of the record. The Supreme Court, by Order of March 29, 1985, remanded this matter to the board directing:

"A hearing on the issue of laches, with Findings of Fact and Recommendation of the Disciplinary Board to be submitted to the Court within 30 days . . ." Pursuant to that order, a hearing was held before a Reviewing Committee of the Disciplinary Board of the Supreme Court consisting of the undersigned as Chair, Winfield Keck, and James J. Curran, Jr., Esq., on April 22, 1985. Respondent was present at the hearing represented by his counsel throughout these proceedings, [H], Esq. The Office of Disciplinary Counsel was represented by [I], Assistant Disciplinary Counsel in Charge of District [   ], and [J], Esq., Deputy to Chief Disciplinary Counsel.

Prior to the hearing, by order of the Chairman of the Disciplinary Board, John M. Elliott, Esq., counsel for both sides submitted proposed findings of fact and conclusions of law on the issues of laches. The hearing lasted the entire day and consisted of both testimonial evidence and oral argument. [K], Esq., who represented respondent in a civil suit brought by [C], and respondent himself were called as witnesses by respondent. Assistant Disciplinary Counsel [I] and Investigator [L] testified on behalf of the Office of Disciplinary Counsel. At the end of the hearing, both sides were afforded the opportunity to submit legal briefs.

In order to expedite the matter, in compliance with the order of this honorable court, the proposed findings of fact and conclusions of law, as well as the legal memoranda, were sent by express mail to each member of the Disciplinary Board, prior to its deliberation and recommendation.

## II. FINDINGS OF FACT

1. The "operative acts" of respondent's conduct came to a conclusion in November of 1976 when the Honorable [F] granted [C]'s motion for summary judgment in the suit respondent had instituted against [C] individually.

2. Many of those "operative acts" were incorporated into a civil action brought by the [C]s in 1976 charging respondent, and others, with abuse of process and malicious use of process, which civil action was tried before a jury in [   ] County commencing on June 18, 1979 and concluding on July 21, 1979.

3. Prior to the last week in June of 1979, no one in the Office of Disciplinary Counsel had any actual or constructive knowledge of any of those "operative acts."

4. Sometime during the last week in June of 1979, Investigator [M], at that time the sole investigator for District [   ], had a brief and informal conversation with [N], Esq., who advised Investigator [M] of a pending civil action against respondent. This was the first notice of this matter to the Office of Disciplinary Counsel.

5. On July 2, 1979, Investigator [M] obtained the docket entries to the underlying civil action of [C] v. [Respondent], et al., no. [   ], [   ] County.

6. While doing so, Investigator [M] briefly spoke with [G], Esq., counsel for the [C], who indicated

that his clients might want to file a disciplinary complaint against respondent after their civil action was concluded.

7. Investigator [M] prepared a memorandum of the above events on July 2, 1979 and placed it in his "miscellaneous" file.

8. The civil action of [C] v. [Respondent], was settled in February of 1980.

9. By letter dated April 16, 1980, [G] provided Disciplinary Counsel with a partial transcript of the civil trial consisting of [C]'s direct testimony and respondent's complete testimony.

10. Disciplinary Counsel did not consider [G]'s letter as a complaint and did not open a complaint file at that time.

11. On April 18, 1980, Disciplinary Counsel forwarded a letter to [G] acknowledging receipt of his letter of April 16, 1980.

12. On May 5, 1980, Investigator [M] again reviewed the records in the [ ] County Prothonotary's Office and prepared a memorandum relative to the docket entries in the above mentioned civil action against respondent as well as the two separate civil actions initiated by respondent on behalf of his client, [O], Inc., against [B] t/d/b/a [D] Company (no. [ ], October, 1974) and [C] t/d/b/a [D] Company (no. [ ]).

13. From May 5, 1980 to November 10, 1981 — a period of one year and five months — the Office of Disciplinary Counsel took no action to initiate or pursue any investigation against respondent relative to this matter.

14. On or about November 10, 1981, Investigator [M] secured copies of various documents from the [ ] County Prothonotary's Office relative to the civil actions involved. The specific documents obtained at that time were:

A. Writ of execution dated January 20, 1976;

B. Respondent's letter dated March 26, 1976 to Sheriff [P];

C. Affidavit of service dated April 26, 1976;

D. Opinion and order dated November 17, 1976;

E. Opinion and order dated November 12, 1979.

15. On November 11, 1981, Disciplinary Counsel opened a complaint file on its own motion against respondent indexed to no. [   ].

16. From November 11, 1981 until about March of 1983 — a period of one year and four months — Disciplinary Counsel took no action to investigate or pursue the complaint.

17. In March of 1983, Disciplinary Counsel assigned the investigation of this complaint to a new investigator, [L], who had begun his employment as investigator on February 17, 1983.

18. Thereafter, Investigator [L] contacted Messrs. [G] and [E] and [C] to determine if they were then interested in cooperating with Disciplinary Counsel to pursue this complaint.

19. After being assured of the cooperation of [G], [E] and [C], a form D.B.-7 letter of allegations was issued by Disciplinary Counsel to respondent on May 31, 1983.

20. This letter was respondent's first notification of a disciplinary investigation or complaint against him.

21. Between May 31, 1983 and December of 1983, the matter was actively pursued by Disciplinary Counsel through investigation and personal contact with respondent and his attorney.

22. On December 8, 1983, the Office of Disciplinary Counsel filed and served a petition for discipline against respondent.

23. During the period of between July of 1979 and June of 1983, the Office of Disciplinary Counsel

located in District [   ] where the instant action was handled, had inadequate personnel to handle the case load for which it was responsible (see Office of Disciplinary Counsel's Proposed Findings of Fact, nos. 28 through 31).

24. The form D.B.-7 Letter of Allegations was issued approximately seven years after the last event relative to this action occurred.

25. The elapsed time between the alleged conduct and the hearing which was conducted before a hearing committee of the Disciplinary Board of the Supreme Court of Pennsylvania was approximately eight years.

26. Respondent asserted his right to the defense of the doctrine of laches at his very first opportunity.

27. At no time did respondent do anything whatsoever to hinder or delay the prompt disposition of this case.

28. The length of delay, though inordinate and excessive, was unintentional.

29. The delay obscured the accurate and sharp recollection of a number of witnesses.

30. Some of the documents relevent to this proceeding have been lost, including a file maintained by the sheriff's office on the interpleading proceeding relating to respondent's attempt to levy upon the assets of [C], some parts of respondent's own case file, and most of the file of respondent's attorney, [K], Esq.

31. Though certain records have been lost, substantial records of the events which transpired between 1974 and 1976 remain, which include the following:

A. Official [   ] County Court records in the proceedings:

1. [C] v. [Respondent], et al., no. [   ];

2. [O], Inc. v. [B] t/d/b/a [D], no. [ ] October 1974;

3. [O], Inc. v. [C] t/d/b/a [D], no. [ ];

4. Execution Docket Nos. [ ] May of 1975 and [ ] October, 1974;

5. Fictitious Name Registration records relative to the partnership known as [D].

B. Substantial parts of respondent's own files on those matters.

C. The documents attached to respondent's letter to Disciplinary Counsel dated June 6, 1983 in response to the D.B.-7 letter dated May 31, 1983.

D. The documents attached to respondent's answer and new matter.

E. Respondent's exhibits.

F. The documents provided by petitioner's letter of November 23, 1983 to respondent's counsel as inventoried by [H]'s letter of November 29, 1983 (including [C]'s and respondent's testimony given at the civil trial in June of 1979).

## III. CONCLUSIONS OF LAW

1. The doctrine of laches differs from a statute of limitations in that the passage of time alone does not bar the cause of action.

2. Application of the doctrine of laches is dependent upon the application of the following factors to the case at issue:

(1) the length of the delay;

(2) whether the party seeking the application of the doctrine is in any way responsible for the delay;

(3) whether the parties seeking of the doctrine to be applied has been actually prejudiced by the delay; and

(4) whether the party against whom the doctrine is asserted deliberately or intentionally provoke the delay.

3. A delay of seven years between the operative conduct and notice of the disciplinary investigation was inordinate and excessive.

4. There does not exist even a scintilla of evidence that the delay was deliberate, intentional or strategic.

5. Respondent was originally charged with five violations of the Code of Professional Responsibility as follows:

A. D.R. 1-102(A)(4), which prohibits conduct involving dishonesty, fraud, deceit or misrepresentation;

B. D.R. 1-102(A)(5), which prohibits conduct which is prejudicial to the administration of justice;

C. D.R. 1-102(A)(6), which prohibits conduct which adversely reflects upon an attorney's fitness to practice law;

D. D.R. 7-102(A)(1), wich prohibits an attorney from filing a suit, asserting a position, conducting a defense, delaying a trial, or taking other action on behalf of his client when he knows or it is obvious that such action would serve merely to harass or maliciously injure another; and

E. D.R. 7-102(A)(2), which prohibits an attorney from knowingly advancing a claim or defense that is unwarranted under existing law unless such claim or defense can be supported by a good faith argument for an extension, modification, or reversal of existing law.

6. Because A, C, D and E above involve at least to some extent an examination of the thought processes, knowledge or lack of knowledge, motive and intent of respondent at the time the acts were committed, these violations were dismissed by the hearing committee on the basis of the requisite prejudicial effect of the passage of time.

7. As to B, respondent's violation of Disciplinary Rule 1-102(A)(5), which prohibits conduct which is prejudicial to the administration of justice, sufficient irrefutable documentation exists to find respondent guilty of this violation without regard to the passage of time.

## IV. DISCUSSION

Admittedly, this is a difficult case to adjudicate. On the one hand, there exists a considerable amount of credible evidence that between January and November of 1976 respondent engaged in an unethical pattern of conduct directed against a member of the public. The record demonstrates repeated abuse of the processes uniquely available to an attorney as an officer of the court. Respondent obtained court orders ex parte, issued subpoenas in contradiction to the court order which authorized the use of the subpoena, abused the right of execution and garnishment, and filed pleadings, without regard to the truthfulness or lack thereof of the matters contained therein. Respondent's actions toward [C] more closely resembled a persecution, than a prosecution of a legitimate right of action. Were this matter prosecuted promptly as it should have been, there is a strong likelihood based upon the existent record that respondent may have been found in violation of all of the charges brought against him, justifying a far more serious recommendation of discipline.

On the other hand, however, the delay of seven years between the operative conduct and notice of the investigation, and eight years between the operative conduct and the original hearing, is excessive. Respondent has urged that he was misled by documents no longer in existence, such as the informa-

tion from the Department of Transportation as to who was listed as the owner of the wrongly repossessed vehicle taken from the [C] property. Respondent has further stated that his own recollection of the events have become distorted by the passage of time preventing him from offering evidence in mitigation of the charges against him.

The Reviewing Committee of the Disciplinary Board of the Supreme Court of Pennsylvania upon its initial appellate review of these proceedings determined after lengthy deliberation that it was possible for the doctrine of laches to apply to some of the charges in a particular case without applying to all. Its original recommendation to the board as a whole was the same as that of the original hearing committee, that respondent be found to be in violation of D.R. 1-102(A)(5) only, and be accorded a private reprimand. Upon reconsideration in spite of the lengthy testimony on both sides offered at the hearing of April 22, the reviewing committee has made the same recommendation, which has been accepted and approved by the board as a whole upon its reconsideration of the matter.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that respondent be subjected to a private reprimand and that all costs in connection with this proceeding be paid by respondent.

## ORDER

ELLIOTT, *Chairman,* And now, this June 26, 1985, following the entry of the order of the Supreme Court dated June 14, 1985, it is ordered and decreed, that [respondent] of [   ] County be sub-

jected to private reprimand by The Disciplinary Board of the Supreme Court of Pennsylvania as provided in Rule 204(5) of the Pennsylvania Rules of Disciplinary Enforcement at the next session of this Board. Costs are to be paid by respondent.